# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**JOSEPH TORRES,**

    **Plaintiff,**

**v.**                                                               **No. 10-cv-0267 BB/SMV**

**JOE WILLIAMS; GEORGE TAPIA;**
**JOE PACHECO, Unit Manager; FNU GATTI;**
**FNU VARGASS, Correctional Officer;**
**FNU BURNING, Correctional Officer;**
**DAVID GALLEGOS, Transport Officer;**
**CMS MEDICAL STAFF; and FNU BELL, Sgt.,**

**Defendants.**

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

This is a civil rights action brought by a prisoner pursuant to 42 U.S.C. § 1983.  Civil Rights Complaint Pursuant to 28 U.S.C. § 1983 [Doc. 1] ("Complaint").[1]  Plaintiff is proceeding pro se, *id.*, and in forma pauperis.  *See* Memorandum Opinion and Order [Doc. 14] at 1.  Plaintiff alleges that his constitutional rights were violated during his incarceration at the Penitentiary of New Mexico ("PNM").  At issue here are his allegations that he was denied timely and appropriate medical attention for a serious medical condition.

This matter is before the Court on Defendants Joseph Pacheco, Michael Gatti, David Gallegos, Fernando Vargas and Aaron Bell's ("Movants") Motion for Summary Judgment on Medical Claims Asserted by Plaintiff [Doc. 30] and Memorandum Brief in Support [Doc. 31]

---

[1]  The pages of the Complaint as it appears on the docket seem to be out of order.  To avoid potential confusion, citations to page numbers in the Complaint will be to the pagination electronically generated by the CM/ECF header at the top of every page.  The Court understands the proper order for the pages of the Complaint, as described by the CM/ECF pages, to be: pages 1, 2, 3, 6, 5, 4, 10, 7, 11, 8, 9, 12, and 13.

(collectively referred to as "Motion"), filed December 8, 2011. Plaintiff filed his Response to Summary Judgment [Doc. 33] ("Response") on December 19, 2011.  Defendants filed their Reply Brief [Doc. 34] ("Reply") on January 3, 2012.  I have reviewed the Complaint, the Motion, the Response, and the Reply, construing Plaintiff's pro se filings liberally and holding him to a less stringent standard than that required of a party represented by counsel. *See, e.g.*, *Gillihan v. Shillinger*, 872 F.2d 935, 938 (10th Cir. 1989).  Having considered the pleadings, briefs, relevant law, and being otherwise fully advised, I find that the Motion should be granted in part and denied in part.

## I.    The Allegations of the Complaint

It is clear that Plaintiff is claiming that he was denied appropriate medical care.  *See* Complaint [Doc. 1] at 2.  It is equally clear that such allegations are directed at "CMS[2] medicle [sic] staff," *Id*. at 2, which I take to mean the medical staff at PNM, *id*.  He identifies some of these staff members by name, e.g., "Nurse Jane." *Id*. at 6.  Beyond that, however, his allegations with respect to the denial of medical care are far from clear.  It is undisputed that Movants are not part of the medical staff at PNM.  *See* Affidavit of William E. Steiger [Doc. 31] at 6, ¶ 5. Therefore, my analysis of Plaintiff's claims will focus on allegations directed at persons other than medical staff.

I will now cite what I consider to be the pertinent allegations from the Complaint, and then explain how I construe them for purposes of this motion.  Beginning at page 6 of the

---

[2]  CMS undoubtedly refers to Correctional Medical Services, Inc., the former name of Corizon, Inc., the company that is contracted to provide medical services at PNM. See Affidavit of William E. Steiger [Doc. 31] at 5, ¶ 2.

Complaint (under the heading (1)(A)(2) of the Complaint's organization), Plaintiff alleges, in

pertinent part:

> [O]n . . . October 29, 2009, I . . . did suffer . . . pain . . . [while] having problems urinat[ing] because of kidney stones. . . . [I] [collapsed and] fainted, hitting my head . . . and hurting my back. [I] requested medicle[sic] attention by Nurse Jane. Medicle [sic] attention was denied.
>
> .     .     .
>
> That on 10-29-2009 I plaintiff started suffering harassment by CO Vargas [and] CO Burning when they notified them of [my] administration grievance and tort complaint to the district court, that because Officer Burning was listed as a witness for Nurse Jones refuseing [sic] medicle [sic] attention and when plaintiff [suffered] a [collapse while] trying to urinate, that Office Burning did violate Corrections' policy seeing inmate on the floor apparently face down by toilet area. At 11:30 pm on around Oct.-29-2009 [Officer Burning] did leave plaintiff unattended when suffered a [collapse]. [Due to medicle [sic] [negligence] and knowing[] that inmate was having medicle [sic] problems[, he] was [negligent in] his duties[ by] leaving inmate [collapsed] on the floor from 11:30 pm . . . to around 5:30 pm. Well before going home [he] discovered there was a medicle [sic] problem after seeing inmate was [unconscious] medicle [sic] was called. Plaintiff was taken to Medicle [sic] to only be seen by [nurse practitioners] Lila and Mansenares [who gave] plaintiff an ice pack for head injuries.

Complaint [Doc. 1] at 6, continuing onto 5 (page marked "Supporting Fact. Staff Herasment [sic]

Sexual Herassment [sic]").

Construing the Complaint liberally, I understand Plaintiff to be alleging that he

experienced pain while urinating; he asked to see the medical staff and was taken to see "Nurse

Jane"; she denied him medical attention; he subsequently filed a grievance and a tort action

against her and others in state court; he then suffered a second episode of pain which caused him

to faint/collapse, injuring his head and back; Defendant Burning found him unconscious on the

floor; in retaliation for Plaintiff filing the grievance and/or the state court action against Nurse

Jane, Defendant Burning delayed notifying the medical staff that Plaintiff needed attention.[3]

Plaintiff alleges further that the delay in medical treatment caused him to suffer permanent and

disabling injuries.  *Id*.  Movants deny all allegations relating to medical treatment.  Defendants

[Pacheco, Gatti, Gallegos, Vargas, and Bell's] Answer for Alleged Violations of Plaintiff's Civil

Rights [Doc. 25] ("Movants' Answer") at 1–2.

## II.    The Motion for Summary Judgment

In their Motion, Movants assert that they are entitled to summary judgment as a matter of

law on all of Plaintiff's claims "related to medical malpractice or medical negligence."

[Doc. 31] at 3.  They contend that they had no responsibility to provide Plaintiff with medical

care because they are not employees of Corizon, Inc., which has, by virtue of its contract with

the State of New Mexico, assumed all responsibility for providing healthcare services to inmates

of PNM.  *Id*.  In support of their Motion they offer the affidavit of William F. Steiger,

Vice-President of Operations for Corizon.  *Id.* at 5–6.  Mr. Steiger states in his affidavit,

> 2.    That, as of July 1, 2007, Corizon, f/k/a Correctional
> Medical Services, Inc.[,] was contracted to provide the medical and
> psychiatric services for all of the inmates within the New Mexico
> Corrections Department [("NMCD")];
> 3.    That [PNM] is one of the facilities within the
> NMCD;
> 4.    That, as Corizon provides medical and psychiatric
> services at the PNM, it is solely responsible for the provisions [sic]
> thereof;
> 5.    That [Movants] are not employees of Corizon . . . .

---

[3]  He also claims that the medical staff either refused to treat him or provided inadequate treatment in retaliation
for his filing the state court tort action.  Complaint [Doc. 1] at 6.  However, Plaintiff's claims against the medical
staff are not pertinent to the present motion.

*Id.* Movants' Statement of Undisputed Facts tracks Mr. Steiger's affidavit nearly verbatim. *See* Motion [Doc. 31] at 2.

Plaintiff filed his Response on December 19, 2011 [Doc. 33]. He makes no effort to dispute Movant's Undisputed Facts. *Id*. He does not dispute that Corizon is the sole medical services provider for the PNM. *Id*. Nor does he assert that Movants were employees of Corizon at the material times. Instead, he argues that

> Defendants are held responsible as to plaintiff/inmate's receiveing [sic] medicle [sic] attention. Do [sic] to the fact[] that inmates housed at [PNM] are locked-down [and] segregated 23 hours a day and need to [rely] on NMCD employees . . . to make alert (Corizon) Medicle [sic] staff contracted by Corrections Department make aware/alert when medicle [sic] attention is needed or when an emergency arises, therefor Defndants are responsible when medicle [sic] attention is not provided upon request[,] especially when an emergency arises as [in] Plaintiff's claim.

*Id.* at 1–2. Thus, it seems clear that Plaintiff is not alleging that Movants had a duty to provide him with medical care, but rather that they had a duty to inform the medical staff when they became aware that medical care was needed.

## III.    Undisputed Facts

I adopt as undisputed Movant's Undisputed Facts Nos. 1–3 as contained in Section II of the Motion. *See* [Doc. 31] at 2.

## IV.    The Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure states: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the

initial burden of "show[ing] that there is an absence of evidence to support the nonmoving

party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc*., 939 F.2d 887, 891 (10th Cir. 1991)

(internal quotation marks omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Once the movant meets this burden, rule 56 requires the nonmoving party to designate specific

facts showing that there is a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324; *Anderson v.

Liberty Lobby, Inc*., 477 U.S. 242, 256 (1986).   The party opposing a motion for summary

judgment must "set forth specific facts showing that there is a genuine issue for trial as to those

dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First

Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990); *see also Vitkus v. Beatrice Co*., 11

F.3d 1535, 1539 (10th Cir. 1993) ("However, the nonmoving party may not rest on its pleadings

but must set forth specific facts showing that there is a genuine issue for trial as to those

dispositive matters for which it carries the burden of proof." (internal quotation marks omitted)).

Rule 56(c)(1)(A) provides: "A party asserting that a fact . . . is genuinely disputed must support

the assertion by citing to particular parts of materials in the record, including depositions,

documents, electronically stored information, affidavits or declarations, stipulations (including

those made for purposes of the motion only), admissions, interrogatory answers, or other

materials."   It is not enough for the party opposing a properly supported motion for summary

judgment to "rest upon mere allegations or denials of his [or her] pleadings." *Liberty Lobby*, 477

U.S. at 256; *see also Abercrombie v. City of Catoosa*, 896 F.2d 1228, 1230 (10th Cir. 1990);

*Otteson v. United States*, 622 F.2d 516, 519 (10th Cir. 1980) ("However, 'once a properly

supported summary judgment motion is made, the opposing party may not rest on the allegations

contained in his complaint, but must respond with specific facts showing the existence of a

genuine factual issue to be tried.'" (citation omitted)).   Nor can a party "avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation." *Colony Nat'l Ins. Co. v. Omer*, No. 07-2123-JAR, 2008 WL 2309005, at *1 (D. Kan. June 2, 2008) (citing Fed. R. Civ. P. 56(e); *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006)).   In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988).   To deny a motion for summary judgment, genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Liberty Lobby*, 477 U.S. at 250.   A mere "scintilla" of evidence will not avoid summary judgment. *Vitkus*, 11 F.3d at 1539.   Rather, there must be sufficient evidence on which the fact finder could reasonably find for the nonmoving party. *See Liberty Lobby*, 477 U.S. at 251 (quoting *Schuylkill & Dauphin Improvement Co. v. Munson*, 81 U.S. 442, 448 (1871)); *Vitkuss*, 11 F.3d at 1539.   "[T]here is no     issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.   If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249 (citations omitted).   Where a rational trier of fact, considering the record as a whole, could not find for the nonmoving party, there is no genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

When reviewing a motion for summary judgment, the court should keep in mind three principles.   First, the court's role is not to weigh the evidence, but to assess the threshold issue of whether a genuine issue exists as to material facts requiring a trial. *See Liberty Lobby*, 477 U.S.

7

at 249.  Second, the court must resolve all reasonable inferences and doubts in favor of the nonmoving party, and construe all evidence in the light most favorable to the nonmoving party. *See Hunt v. Cromartie*, 526 U.S. 541, 552 (1999); *Liberty Lobby*, 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). Third, the court cannot decide any issues of credibility.  *See Liberty Lobby*, 477 U.S. at 255.

## V.    The § 1983 Standard for Eighth Amendment Violations

The standard that courts use to determine whether a prisoner's Eighth Amendment rights have been violated is that of "deliberate indifference."  *See Wilson v. Seiter*, 501 U.S. 294, 297 (1991).

One of the core concerns of the Eighth Amendment is inmate access to necessary medical care.  *See Ramos v. Lamm*, 639 F.2d 559, 566 (10th Cir. 1980).  In a § 1983 action for damages, "only deliberate indifference to serious medical needs of prisoners violates the Eighth Amendment proscription against cruel and unusual punishment."  *Id*. at 575 (internal quotation marks omitted).  A deliberate indifference to serious medical needs may be "manifested . . . [by] denying or delaying access to medical care."  *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). Nonetheless, delay in medical care, by itself, does not support a constitutional claim.  *Olson v. Stotts*,  9 F.3d 1475, 1477 (10th Cir.1993).  Rather, such delay constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm.  *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000).

## VI.   Analysis

First, I believe all of the Movants are entitled to summary judgment to the extent the Complaint can be read to raise claims of medical malpractice or the negligent provision of

medical care.  As discussed above, a fair reading of the Complaint demonstrates that Plaintiff's allegations fall into two categories: those against the medical staff (either for refusing to provide medical care, or for providing inadequate medical care), and those against PNM employees for ignoring Plaintiff's need for medical care (and thus delaying it).  I do not believe Plaintiff seeks to hold non-medical PNM employees, such as Movants, responsible for the inadequate medical care he claims to have received.  But to the extent the Complaint can be read to allege that, I believe Movants have established that they are entitled to summary judgment as a matter of law.

With respect to the second category of claims, I believe Plaintiff's Complaint and his Response to the Motion raise a genuine issue of fact regarding whether one of the Defendants, specifically Defendant Burning, intentionally delayed notifying the medical staff of Plaintiff's need for medical treatment.[4]  I acknowledge that the Movants' motion may not have been intended to reach such a claim, but that is not entirely clear.  On the one hand, Movants ask for summary judgment on "any and all claims related to medical malpractice or medical negligence."  Motion [Doc. 31] at 3.  Since the terms "medical malpractice" and "medical negligence" are often used interchangeably, this suggest that the motion is aimed only at allegations that are in the nature of a medical malpractice claim.  On the other hand, in their Motion and briefs, Movants sometimes refer to "all medical claims," which could be read as including a claim based on failure to see that the Plaintiff's medical problems were promptly reported to the medical staff.  *See, e.g.,* Motion for [Doc. 30] at 1.  Importantly, Movants do not request summary judgment on all medical claims against all *Defendants*; rather, their Motion

---

[4]  Defendant Burning is the only Defendant alleged to have delayed notifying the medical staff of Plaintiff's need for medical attention.  Although Plaintiff claims that the other Movants subjected him to harassment, he does not allege that they caused any delay in his receiving medical treatment.  *See generally* Complaint [Doc. 1].

requests summary judgment on all medical claims against the *Movants*. Therefore, my recommendation shall not be construed to also recommend granting summary judgment on Plaintiff's claim that Defendant Burning intentionally delayed notifying the medical staff of Plaintiff's need for medical treatment.

**VII.     Recommended Disposition**

I therefore **RECOMMEND** that Movants' Motion for Summary Judgment on Medical Claims, [Doc. 30], be **GRANTED** to the extent the Complaint seeks to hold Movants Joseph Bell, Michael Gatti, David Gallegos, Fernando Vargas, and Aaron Bell liable to Plaintiff under any theory of medical malpractice or medical negligence.

I **RECOMMEND** further that the Motion be **DENIED** only to the extent that the Complaint seeks to hold Defendant Burning liable for intentionally delaying notifying the medical staff of Plaintiff's need for medical attention.

Once all necessary parties are in the case, I will order the Defendants to submit *Martinez* reports on the remaining claims.[5]

---

[5]   In a suit brought by a pro se prisoner, the Court may order the defendants to investigate the incident underlying the suit and to submit a report of the investigation, known as a "*Martinez* report," in order to assist the Court in determining whether there is a factual and legal basis for the prisoner's claims. *Hall v. Bellmon*, 945 F.2d 1106, 1109 (10th Cir. 1991); *see also Martinez v. Aaron*, 570 F.2d 317, 319–20 (affirming the propriety and necessity of such reports).

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any written objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

_____

**STEPHAN M. VIDMAR**
**United States Magistrate Judge**